## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff,

vs.

LE ENERGY, LLC d/b/a UTILITY GAS & POWER,

        Defendant.

Case No. 2:19-cv-1325

Judge Smith

Magistrate Judge Jolson

**PLAINTIFF PHILIP CHARVAT'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Philip Charvat's ("Mr. Charvat's") Complaint is well pled.  He alleges that he received a pre-recorded call directing him to press "one" to see if he could qualify for a fixed electric rate, he pressed "one" in order to identify the caller, and then a live representative came on the line and determined he qualified for a fixed electric rate, quoted him a specific fixed electric rate, and told him that he was from Defendant LE Energy d/b/a Utility Gas & Power ("LE Energy") and that LE Energy would be providing him the fixed electric rate.  These factual allegations are more than sufficient to state a plausible claim that LE Energy made the call to him.

LE Energy claims that Mr. Charvat's Complaint should be dismissed because he did not provide sufficient evidentiary material to conclusively negate the possibility that LE Energy could have hired some other unidentified company to dial his number prior to its live representative coming on the line to speak with Mr. Charvat.  But that is not Mr. Charvat's burden at this stage.  Mr. Charvat did far more than could be expected of any recipient of LE

Energy's illegal calls to investigate the source of the call by feigning interest in LE Energy's sales pitch. He is not required to know the hidden inner workings of LE Energy's dialing processes to allege a plausible TCPA claim. For the foregoing reasons, LE Energy's Motion to Dismiss must be DENIED.

## FACTUAL BACKGROUND

Mr. Charvat brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance, telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Mr. Charvat alleges that LE Energy made a pre-recorded telemarketing call to his residential telephone number in violation of the TCPA.

LE Energy placed a pre-recorded telemarketing call to Mr. Charvat's residential telephone number on February 5, 2019. (Doc. 7, ¶¶ 2, 27-29.) LE Energy uses pre-recorded messages in its telemarketing efforts because they allow for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who continue the call by pressing a button. (*Id.*, ¶ 22, 24.)

When Mr. Charvat picked up the phone, a pre-recorded message was played, stating:

> This is an important message. If you have paid your recent bills on time you can now have a fixed rate to avoid expensive rate increases this season. Press one to see if you can qualify for the long term savings. Please press one now.

(*Id.*, ¶¶ 29-30.) Because the company was not identified in this pre-recorded message, Mr. Charvat responded by pressing "one" to speak with a live individual in order to determine who had illegally called him. (*Id.*, ¶¶ 31-32.) Mr. Charvat feigned interest in the energy savings telemarketing pitch that was made on the call, and by doing so, was able to identify LE Energy as the company that made the call. (*Id.*, ¶ 32.)

2

When the live individual came on the line, he determined that Mr. Charvat was a qualified customer.  (*Id.*, ¶ 33.)  The live individual then "quoted [Mr. Charvat] a specific fixed electric rate and told him that his company would be providing and giving him that rate."  (*Id.*, ¶ 34.)  The live individual "further stated his company was 'Utility Gas & Power'," which is a registered trade name of LE Energy.  (*Id.* ¶ 35-36.)  "LE Energy tried to sell [Mr. Charvat] its goods and services on the call."  (*Id.* ¶ 37.)  Mr. Charvat did not consent to receive the call.  (*Id.*, ¶ 23.)

Mr. Charvat brings this suit on behalf of a proposed class of other similarly situated persons or entities.  Mr. Charvat and the other call recipients were harmed by the calls because "[t]hey were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded.  Moreover, these calls injured [Mr. Charvat] and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of [Mr. Charvat] and the class."  (*Id.*, ¶ 38.)

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), a court determines whether a plaintiff is entitled to offer evidence in support of his claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (citation omitted).  To survive such a motion, a plaintiff must merely plead enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A motion to dismiss must be denied unless there is no "reasonable expectation that discovery will reveal evidence" that would enable the trier of fact to decide in favor of the plaintiff.  *Matrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## LAW AND ARGUMENT

Mr. Charvat has pled a plausible claim that LE Energy made a prerecorded call to his residential telephone number. A live representative of LE Energy told him on the call that his company was called Utility Gas & Power—a trade name of LE Energy—and told him that his company—LE Energy—would be providing him a specific fixed electric rate. (*See* Doc. 7, ¶¶ 31-37.)

If the live representative was actually from some other company, he gave Mr. Charvat no indication that was the case. Indeed, if that were the case, it would be contrary to what he explicitly told Mr. Charvat. (*See id.*, ¶¶ 34-36.) While it is always possible that the live representative was lying to him, Mr. Charvat is not required to negate that possibility at the pleading stage. Mr. Charvat only needs to make plausible allegations. Considering the representative told him his company was LE Energy, it is certainly plausible that he was an LE Energy employee rather than an employee of some other unidentified company.

Likewise, if LE Energy happened to use some other company to initially dial Mr. Charvat's number and physically place the prerecorded call, there was no indication that was the case either. The prerecorded message did not mention LE Energy by name[1], but it advertised LE Energy's services—the fixed electric rate that LE Energy provides its customers—and directed the recipient to press one to see if they qualified. (*Id.*, ¶ 30.) Mr. Charvat did so, and then a live representative came on the line and proceeded to "determine[ ] that [Mr. Charvat] was a qualified customer" and "quote[ ] [Mr. Charvat] a specific fixed electric rate and [tell] him that his company would be providing him and giving him that rate." (*Id.*, ¶¶ 32-34.) As such, the live representative from LE Energy did exactly what the prerecorded message said would occur—he

---

[1] This is by design, to trick unwitting recipients of the calls into believing it is their current energy supplier calling them with an "important message" about their eligibility for savings on their electric bill due to paying their bills on time. (*See* Doc. 7, ¶ 30.)

determined Mr. Charvat's eligibility for a fixed electric rate and quoted him the rate. Given the obvious link between what the prerecorded message said and what the LE Energy employee did as soon as he came on the line, it is certainly plausible that LE Energy placed the call. Indeed, as Mr. Charvat alleged, LE Energy uses prerecorded messages because thousands of calls can be placed at one time, but their telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone, thereby shifting the burden of wasted time to consumers.

As such, Mr. Charvat's allegations are similar to (and are in fact stronger than) those recently found to be sufficient to withstand a motion to dismiss in *Bank v. CreditGuard of Am.*, No. 18-CV-1311 (PKC) (RLM), 2019 U.S. Dist. LEXIS 49363, at *20-22 (E.D.N.Y. Mar. 22, 2019). In that case, though the initial telemarketing call the plaintiff received did not mention the name of the entity making the call, the plaintiff alleged that during the course of his follow-up investigation, he "confirmed that the live operator he was connected to as part of the Telemarketing Call was 'someone from Freedom Financial.'" *Id.* at *20-21. There were multiple "Freedom Defendants" which the plaintiff alleged had done business as "Freedom Financial," and the court found that the plaintiff's allegations were "sufficient to raise a plausible inference that at least one of the Freedom Defendants was responsible for initiating the Telemarketing Call," but that "time would tell" which of the Freedom Defendants, if any, actually initiated the call. *Id.* at *21. *See also Abante Rooter & Plumbing v. Pivotal Payments, Inc.*, No. 16-cv-05486-JCS, 2017 U.S. Dist. LEXIS 26457, at *4-11, 23-24 (N.D. Cal. Feb. 24, 2017) (plaintiff alleged facts supporting plausible inference defendant was responsible for robocalls where plaintiff alleged it received generic prerecorded messages, followed the messages' instructions, and then received follow up calls from the defendant). Mr. Charvat is not required at the pleading stage to definitively prove that LE Energy did not use some

unidentified third party to dial his number. *Morris v. SolarCity Corp.*, No. 15-CV-05107-RS,

2016 U.S. Dist. LEXIS 46748, at *2 (N.D. Cal. Apr. 6, 2016) ("While it certainly is plausible

that the calls could have been made by some such third party, it is not Morris's burden at this

juncture to come forward with allegations or evidence conclusively negating the possibility that

Solar City neither made the calls itself nor can be held indirectly liable.  He has alleged facts

from which SolarCity's direct or indirect liability may plausibly be inferred."); *CreditGuard of

Am.*, 2019 U.S. Dist. LEXIS 49363, at *21-22.  It is always a possibility that behind the scenes,

LE Energy could have hired some other party to do the dialing, but as the call played out, there

was no indication that occurred.  Mr. Charvat did what he could to identify LE Energy, but he

was not required to depose the live representative as to the inner-workings of LE Energy's

telemarketing processes in order to state a plausible TCPA claim.  *See Brown v. Collections

Bureau of Am., Ltd*, 183 F. Supp. 3d 1004, 1005 (N.D. Cal. 2016) ("A plaintiff need not

somehow have inside knowledge of a defendant's operations and equipment to survive dismissal

under Rule 12(b)(6), rather, he or she merely must proffer factual allegations that support a

reasonable inference that an ATDS was used."); *Metten v. Town Sports Int'l., LLC*, No. 18-CV-

4226 (ALC), 2019 U.S. Dist. LEXIS 47138, at *8-9 (S.D.N.Y. Mar. 21, 2019) (direct liability

sufficiently alleged where plaintiff plausibly alleged the defendant initiated texts using CallFire

software, although it was also plausible the defendant could have had an agency relationship

whereby CallFire initiated the texts, noting it "would be unreasonable" to require the plaintiff to

allege the specifics of such a relationship prior to discovery).  Indeed, as soon as Mr. Charvat

ceased to appear to be an interested customer, the representative would have likely hung up the

phone on him.

LE Energy claims that Mr. Charvat did not plead enough factual details to link LE

Energy to the prerecorded call, but the details LE Energy claims are missing are superfluous.  LE

Energy does not explain how pleading the name of the live representative or the caller ID (often

spoofed in any event and unnecessary here to link multiple calls of questionable origin together

because there was only one call) would change anything, and cannot even think of any other

details Mr. Charvat should have included but didn't.  Aside from the live representative's name

and the caller ID, LE Energy merely makes a vague claim that Mr. Charvat did not provide any

"other information linking LE Energy" to the prerecorded message, while ignoring that the live

LE Energy representative that came on the line proceeded exactly as the prerecorded message

described—to determine Mr. Charvat's eligibility and then to offer him a fixed electric rate.  (*See*

Doc. 13, p. 7.)

LE Energy also attempts to break apart the prerecorded message from the rest of the call

by characterizing how Mr. Charvat came to speak to the LE Energy representative as "an

outbound call from [Mr. Charvat] to an apparent inbound call center," but Mr. Charvat simply

followed the process set forth in the message and pressed "one," resulting in an LE Energy

representative coming on the line.  (*See id.*, p. 8; Doc. 7, ¶¶ 30-34.)  A court has admonished

defendants in another case when they similarly attempted to recast Mr. Charvat's allegations:

> I also reject defendants' attempt to skirt plaintiff's allegations of
> their direct involvement in the automated call by recasting his
> allegations about being 'transferred' to an Esurance agent as
> setting forth an 'inbound call by plaintiff to a live Esurance
> employee.' That characterization plainly distorts plaintiff's account
> of the call and of how he came to speak to a live agent.

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150-1151 (N.D. Ill. 2014) (denying motion to

dismiss).

LE Energy's case law is all readily distinguishable from this case.  In *Bank v. Vivint*

*Solar, Inc.*, No. 18-CV-2555 (MKB), 2019 U.S. Dist. LEXIS 30638 (E.D.N.Y. Feb. 25, 2019),

the plaintiff alleged that he received a generic prerecorded message, that he was transferred to a

live person, and that the live person told the plaintiff "*approximately 30 minutes later, someone*

*would call him*."  *Id.* at *2-3 (emphasis added).  The plaintiff didn't allege that the live person

provided him any other information or said anything about which entity or entities' business was

being promoted.  *Id.* at *2-6.  Rather, the plaintiff attempted to rely on a follow-up call 30

minutes later from the defendant to allege that the initial call was placed by the defendant as

well.  *Id.*  Here, in contrast, the live person that Mr. Charvat spoke with on the illegal call to his

residence told him he was from LE Energy and promoted LE Energy's services.  No one told

him to await a callback from some other person or entity.  Indeed, the mere fact that this *didn't*

happen to Mr. Charvat as it did to the plaintiff in *Vivint Solar* bolsters Mr. Charvat's allegation

that LE Energy placed the call to him.

In *Canary v. Youngevity Int'l., Inc.*, No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS

46429 (N.D. Cal. Mar. 20, 2019), the plaintiff did not answer the call in question, and the

voicemail message left on the plaintiff's phone specifically identified a third party other than the

defendant.  *Id.* at *2-4.  Moreover, calling the number set forth in the voicemail message only led

to a support specialist of the third party—"there was no mention of [the defendant]."  *Id.* at *2-4,

6-9.  The plaintiff alleged that despite what the support specialist told him, the support specialist

was really an employee of the defendant, but his allegations in this regard were not plausible.  *Id.*

These allegations do not resemble Mr. Charvat's here, where he alleges he spoke to a live

individual on the illegal call to his residence who specifically told him that his company was LE

Energy and tried to sell him LE Energy services.  Mr. Charvat's allegations simply set forth what

the live representative told him; he is not trying as the plaintiff in *Canary* was to allege that the live individual was being untruthful and was really an employee of some other entity.

In *Banks v. Pro Custom Solar*, No. 17-CV-613 (LDH) (JO), 2018 U.S. Dist. LEXIS 128182 (E.D.N.Y. July 31, 2018), the court found a claim for direct liability had not been alleged against the defendant where the plaintiff alleged he spoke with a sales representative from a third party, Sunnova, who told him that Sunnova "works with" the defendant and that Sunnova "uses prerecorded calls." *Id.* at *5-6. The court found that these statements would only allow for an inference that Sunnova, not the defendant, placed the calls so as to be directly liable under the TCPA but found that as to the defendant, plaintiff had successfully pled vicarious liability.[2] *Id.* Here, the live representative told Mr. Charvat that *his* company was LE Energy and that *his* company was providing him and giving him the specific electric rate offered. There was no indication that the representative was anything other than an LE Energy employee.

Finally, in what appears to be an attempt to prop up a motion to dismiss that cannot stand on its own two feet, LE Energy contends that the Court should hold Mr. Charvat to a higher standard than the typical Rule 12(b)(6) standard used for other plaintiffs. There is no support for this proposition. In *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281, at *3-4 (D.N.M. Sept. 28, 2018), the court did not "take into consideration that plaintiff was 'well-versed in pursuing claims involving the TCPA' in granting [the defendant's] motion to dismiss" as LE Energy deceptively states. (Doc. 13, p. 11.) That case involved a *pro se* plaintiff, and the court only took the *pro se* plaintiff's experience in pursuing claims under the TCPA into consideration in a previous opinion denying his request to file a second amended complaint prepared by newly retained counsel. *Childress*, 2018 U.S. Dist.

---

[2] The complaint was not dismissed as LE Energy falsely states; the court denied the motion to dismiss. (*See id.* at *8; Doc. 13, p. 9.)

LEXIS 167281, at *3-4[3].  On the basis of this misrepresentation of *Childress*, LE Energy asks

the Court to pore through other complaints filed by counsel for Mr. Charvat and compare the

level of detail set forth in each complaint.  The request is inappropriate in any event, but

particularly so because LE Energy asks the Court to do so without taking into consideration the

unique circumstances of each case, the TCPA violations alleged, or the reasons certain details

would or would not have been useful to include.  Moreover, some telemarketers simply share

more information than others.  However, even if the Court decides to inappropriately engage in

such an analysis and to hold Mr. Charvat to some sort of new heightened 12(b)(6) standard

because he and his counsel's TCPA complaints are consistently well-pled, Mr. Charvat's

complaint meets his own heightened pleading standards.  This case is simple in comparison to

many other complaints Mr. Charvat's counsel have filed on his behalf, in that there was only a

single call as opposed to a series of calls, and the sales representative on the call said he was

from LE Energy.  There was simply no need to overcomplicate the matter.  If anything, the fact

that LE Energy is so complimentary of Mr. Charvat and his counsel's knowledge of "what is

required to state a claim under the TCPA" and of how to "properly plead" TCPA claims weighs

in favor of finding that they did so once again in this case.

### CONCLUSION

For the foregoing reasons, LE Energy's Motion to Dismiss should be DENIED.

---

[3] The facts of *Childress* are also readily distinguishable, as the caller in the pre-recorded message allegedly violating the TCPA identified themselves as being from "Cheap Insurance Experts" as opposed to the defendant, Liberty Mutual Insurance Co. *Id.* at *8-11.

Dated: July 2, 2019

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2019, the foregoing was electronically filed with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to the following:

Michael J. Zbiegien, Jr.
David J. Butler
Taft Stettinius & Hollister LLP
65 East State Street, Suite 1000
Cincinnati, OH 43215
mzbiegien@taftlaw.com
dbutler@taftlaw.com

Ryan D. Watstein
Matthew A. Keilson
Kabat Chapman & Ozmer LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
rwatstein@kcozlaw.com
mkeilson@kcozlaw.com

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654)

11